1  John H. Gomez (SBN 171485)
   John P. Fiske (SBN 249256)
2  Stephanie S. Poli (SBN 286239)
   GOMEZ TRIAL ATTORNEYS
3  655 West Broadway Suite 1700
   San Diego, CA 92101
4  Telephone: (619) 237-3490
   Fax: (619) 237-3496
5
   Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| STEVEN SHAPIRO, individually and on behalf of all others similarly situated, | CASE NO._____ |
|---|---|
| PLAINTIFF, | **CLASS ACTION COMPLAINT FOR:** |
| v. | 1) Violations of the Califiornia Records Act; |
| SONY PICTURES ENTERTAINMENT, INC., | 2) Violations of the Calfironia Unfair Competition Laws; |
| DEFENDANT. | 3) Violations of the Confidentiality of Medical Information Act; and |
| | 4) Negligence |
| | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Steven Shapiro ("Plaintiff" or "Shapiro") hereby files this class action complaint on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against Defendant Sony Pictures Entertainment, Inc. ("Defendant" or "Sony Pictures") and alleges as follows upon personal knowledge as

to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigation conducted by his attorneys.

## NATURE OF THE CASE

1. In or around late November 2014, Sony Pictures suffered a catastrophic data breach of its corporate network. The hackers gained access to sensitive and confidential data available on the Sony Pictures corporate network, including: full names, home addresses, email addresses, password files, private key files, social security numbers, dates of birth, bank account information, passport and other personal identification information, retirement plan information, health insurance and medical information, as well as scores of other data. To date, it has been reported that *at least* 25 gigabytes of sensitive data on tens of thosuands of Sony employees was stolen – some of which has been leaked onto the internet by the hackers – and a hundred terrabytes of data in total.

2. Sony Pictures suffered the catastrophic data breach because it failed to develop, maintain, and implement internet security measures on its corporate network. Indeed, many reports have indicated Sony Pictures' serious lapses in industry standards regarding data protection measures, and much of the hacked information was available in plain text files that were not protected or encrypted.

3. Plaintiff, individually and on behalf of the Class defined below, seeks to obtain relief from Defendant, including, *inter alia*, damages and declaratory relief, based on Sony Pictures' failure to develop, implement, and maintain data security and protection policies that were adequate, reasonable, and reflected industry standards.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity

because at least one plaintiff and defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district and division, is subject to personal jurisdiction in this district and division, and therefore is deemed to be a citizen of this district and division. Additionally, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division.

6. This Court has personal jurisdiction over Defendant because it maintains its principal place of business this judicial district and division and has such minimum contacts with California to make this Court's exercise of jurisdiction proper.

## PARTIES

7. Plaintiff is a resident of the state of California. Plaintiff was employed by Sony Pictures from October 2003 through January 2010. Plaintinff's personal information was compromised and released as a result of the data breach that occurred at Sony Pictures in November, 2014. Plaintiff first learned of the data breach from various media outlets that reported on the data breach.

8. Defendant is a corporation duly organized and existing under the laws of the State of Delaware with its headquarters and principal place of business located in Los Angeles, California.

## FACTUAL ALLEGATIONS

**The Cyberattack on Sony Pictures' Corporate Network**

9. On November 24, 2014, various media oulets reported that a high-profile, studio-wide cyberattack was conducted by a group calling itself the Guardians of Peace, or "#GOP" as they referred to themselves. Sony Pictures was later identified as the studio implicated in the cyberattack. Initial reports believed

#GOP was based out of North Korea.  On December 19, the FBI confirmed that the government of North Korea was responsible for the attack.[1]

10. Sony is intimately familiar with cyber attacks.  In 2011, Sony's PlayStation Network was hit by one of the largest security breaches recorded, in which approximately 77 million PlayStation accounts were hacked.  On or about June 6, 2011, Sony Pictures experienced a data breach whereby hackers called "LulzSec" obtained over one million Sony customer passwords, phone numbers, email addresses, home addresses, and birth dates.  Despite this intimate familiarity, Sony failed to improve its corporate network security in the three years since the PlayStation and LulzSec hacks.

11. Upon gaining access to Sony Pictures' corporate network, access to all of its phones, email-service, and computers was paralyzed.  Further, it is believed the text below was displayed on every computer on the network:

> Hacked By #GOP
> Warning:
> We've already warned you, and this is just a beginning.
> We continue till our request be met.
> We've obtained all your internal data including your secrets and top secrets
> If you don't obey us, we'll release data shown below to the world.
> Determine what will you do till November the 24th, 11:00 PM (GMT).

12. Shortly after the display of the above messages, #GOP allegedly went on to leak a number of unreleased Sony Pictures' films.  Further, a self-titlted "Boss of GOP" began sending emails to media outlets that (a) claimed GOP was responsible for the security breach and (b) that GOP was making the leaked films available through peer-to-peer filesharing systems, such as BitTorrent.

---

[1] http://www.cnn.com/2014/12/19/politics/fbi-north-korea-responsible-sony/ (last visited Dec. 19, 2014).

13. The security breach was perpetuated through the use of a malware program that was capable of wiping memory, taking over total control of the system, and accessing and transfering any data stored on the network.

14. Sony initially communicated that it was investigating an IT matter and failed to disclose the breadth and severity of the catastrophic cyberattack on its corporate networks.

15. The breach was not limited to Sony's own proprietary information. Approximately one week after the initial attack, files were leaked that contained personal and confidential information of more than 6,000 current and former Sony employees. The files contained the pre-bonus salaries of the top 17 Sony executvies, as well as the salaries of other 6,000 current and former employees.

16. On December 2, 2014, Brian Krebs of "Krebs on Security" – a former reporter for The Washington Post and prominent internet security reporter – posted an article that indicated more than 25 gigabytes of sensitive data on tens of thousands of Sony employees was compromised and was being traded on BitTorrent networks and file-sharing websites such as PasteBin.[2] This data included, at minimum, the following:

- Social securitiy numbers;
- Medical information;
- Salary information;
- A global Sony employee list which contained the name, location, employee ID, network username, base salary, and data of birth for more than 6,800 individuals;
- April 2014 status report listing the names, dates of birth, SSNs and health savings account data on more than 700 Sony employees

---

[2] See http://krebsonsecuritiy.com/2014/12/sony-breach-may-have-exposed-employee-healthcare-salary-data/ (last visited Dec. 18, 2014).

- Internal audit from accounting firm Pricewaterhouse Coopers, and includes screen shots of dozens of employee federal tax records and other compensation data.

17. On December 4, 2014, media oulets – including CNET – reported that the social security numbers of more than 47,000 celebrities, freelancers, and current and former Sony employees were released. In addition to the social security numbers, personal information, salaries, and home addresses were also released.

18. On December 5, 2014, #GOP allegedly emailed numerous Sony employees with a threat requiring them to sign a statement repudiating the company:

> Many things beyond imagination will happen at many places of the world. Our agents find themselves act in necessary places. Please sign your name to object the false of the company at the e-mail address below if you don't want to suffer damage. If you don't, not only you but your family will be in danger.[3]

19. On December 8, 2014, a list of celebritiy aliases were released, along with their contact information.

20. On December 12, 2014, various media outlets reported that stolen documents released by #GOP include the medical records of Sony employees. This data allegedly includes conditions such as cancer, liver cirrhosis, and premature births. A separate document lists birth dates, health conditions, and medical costs incurred by 34 employees and their families.

21. On December 16, 2014, #GOP threatened to launch terrorist attacks at movie theathers that show *The Interview* – a film with Seth Rogen and James Franco that was set to open Christmas day and revolved around a fictional plot to kill North Korean leader Kim Jong-un. In addition, thousands of of emails from Sony Pictures

---

[3] http://deadline.com/2014/12/sony-hack-timeline-any-pascal-the-interview-north-korea-1201325501/ (last visitied Dec. 18, 2014).

Co-Chairman and CEO Michael Lynton were released. On the same day, the premier of *The Interview* is cancelled.

22. On December 17, 2014, Sony Pictures canceled the release of *The Interview* and all television advertising for the film is also cancelled. More private emails were also leaked.

**Sony's Failure to Protect Confidential and Highly Sensitive Data**

23. Sony is no stranger to cyberattacks and data breaches. As noted above, in 2011, Sony Computer Entertainment America LLC and Sony Network Entertainment Internationa LLC suffered a data breach of its PlayStation network that affected approximately 77 million users' personal information.

24. On or about June 6, 2011, Sony Pictures experienced a data breach whereby hackers called "LulzSec" obtained over one million Sony customer passwords, phone numbers, email addresses, home addresses, and birth dates. The information stolen was allegedly unencrypted.[4] It is unclear whether Sony Pictures terminated any data security employees after this attack, or whether there were significant (or any) data protection and/or retention policy shifts that were implemented.

25. In addition, data breaches and cyberattacks are becoming increasingly more common, as evidenced by the recent widly publicized incidents at Target, Home Depot and others. As a result, companies that store and maintain confidential and highly sensitive information must develop, implement, and maintain up-to-date data security and retention policies that reduce the risk of cyberattack and unauthorized release of this information.

26. Despite Sony Pictures' own experiences, and its knowledge of recent data breaches, Sony Pictures has failed to develop, implement, and maintain data security and retention policies that reflect industry standards. In fact, an alleged Sony

---

[4] *See* https://www.privacyrights.org/data-breach-asc?title=sony (last visited Dec. 18, 2014).

insider informed Business Insider that "the security team has no f—king clue" what it's doing, and that Sony's security policies were outdated and ineffective.

27. In a meager attempt to shift the spotlight, Sony Pictures CEO Michael Lynton sent a memorandum to Sony Pictures' staff stating that Sony was helpless against the attack. Many notable internet security researches have indicated that Sony Pictures' should have been able to detect unauthorized parties conducting massive data copies in a systematic manner.[5]

28. Providing further support of Sony Pictures' primitive data protection and retention policies, the files #GOP posted online show that Sony Pictures' stored login information for administration accounts, social media accounts, and SSL certificates[6] in a folder named "Password." The hackers used these passwords to cause further adamage and release additional confidential and highly sensitive information.

29. Recently, an article published by the Associated Press identifies numerous flaws in Sony Pictures' data securitiy policies. The article exposes numerous issues, including:

- Its chief executive was regularly reminded in unsecure emails of his own secret passwords for his and his family's mail, banking, travel and shopping accounts, according to a review of more than 32,000 stolen corporate emails circulating on the Internet;
- Lax Internet security practices inside Sony were prevalent, such as pasting passwords into emails, using easy-to-guess passwords and failing to encrypt especially sensitive materials such as confidential salary and revenue figures, strategic plans and medical information about some employees.

---

[5] *See* http://www.businessinsider.com/sony-insider-the-security-team-has-no-fing-clue-2014-12 (last visitied Dec. 18, 2014).

[6] SSL certfiicates digitially signs a web page to prove that it is actually from the company.

- Leaked emails show CEO Michael Lynton routinely received copies of his passwords in unsecure emails for his and his family's mail, banking, travel and shopping accounts, from his executive assistant, David Diamond. Other emails included photocopies of U.S. passports and driver's licenses and attachments with banking statements. The stolen files made clear that Diamond was deeply trusted to remember passwords for Lynton and his family and provide them whenever needed.
- In an October email, the company's chief financial officer, David C. Hendler, complained to Lynton that Sony Pictures had experienced months of "**significant and repeated outages due to a lack of hardware capacity, running out of disk space, software patches that impacted the stability of the environment, poor system monitoring and an unskilled support team**." Mr. Hendler also blamed a company rule that required employees to keep too many old emails.

30. Kevin Mitnick – a former hacker who servied five years in federal prison and now runs a security consulting firm – described Sony Pictures' approach as sloppy. Mitnick also identified that the lax password protection policy resulted in a much more widespread and severe breach, as hackers who steal corporate data often immediately search for the word "password" or a variation of the word across thousands of messages.[7]

31. Sony Pictures' failed to develop, implement, and matain data security and retention policies that would have both detected the breach and helped reduced the severity, or potentially would have prevented the breach entirely. This catastrophic and complete failure by Sony Pictures resulted in increased exposure to

---

[7] *See* http://www.apnewsarchive.com/2014/Sony-emails-reveal-loose-use-of-passwords-and-IDs-ripe-for-hacking/id-041c9dc46e9d408fa569ccac15c0ffe0 (last visited Dec. 18, 2014).

data breaches, and caused the release of tens of thounds of current and former employees' confidential, highly sensitive, and personal information onto the internet and elsewhere.

32. To make matters worse, Sony Pictures has still failed to disseminate adequate and detailed information to its current and former employees regarding the breach, what data was in fact compromised and/or published, and what (if any) measures Sony Pictures has undertaken to prevent identity theft and other fraudulent conduct.

33. As a result of Sony Pictures' failed policies and failure to announce or implement and pay for any necessary identity theft, credit card fraud, or other-fraud based services, Plaintiff and the members of the Class are at increased risk of being subjected to stolen identities and fraudulent charges. Indeed, many members of the Class have likely already had to cancel credit cards, pay for new credit cards to be issued, and pay for credit and identity theft monitoring services in order to prevent further damage from the data breach.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on his own behalf, and on behalf of the following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Classes consist of each of the following:

**National Class:**
All individuals and entities in the United States who had their personal information compromised as a result of the data breach of Sony Pictures' corporate network.

Or, in the alternative,

**California Class:**
All current and former Sony Pictures employees in California who had their personal information compromised as a result of the data breach of Sony Pictures' corporate network.

35. Together, the National and California Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Defendant and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

36. <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that the Class consists of tens of thousands, if not hundreds, of current and former Sony Pictures employees whose personal data was compromised.

37. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a. whether Defendant's data security and retention policies were unreasonable;

    b. whether Defendant failed to protect the confidential and highly sensitive information of its current and former employees;

    c. whether Defendant breached any legal duties in connection with the November, 2014 data breach;

    d. whether Defendant's conduct violated the California Customer Records Act;

    e. whether Defendant's conduct violated the Confidentiality of Medical Information Act;

    f. whether Defendant's conduct violated the California Unfair Competition Law;

    g. whether Defendant's constitutes actionable negligence;

    h. whether Plaintiff and Class members are entitled to monetary

damages and/or other remedies and, if so, the nature of any such relief; and

    i.   whether the Court may apply the law of the State of California to the entire Class because Defendant's conduct emanated from California.

38.   <u>Typicality</u>: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all members of the Class had their personal, confidential, and highly sensitive information compromised in the November, 2014 data breach.

39.   <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not materially or irreconcilably conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

40.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

41. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

42. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the National Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair. Specifically, Defendant's headquarters and principal place of business are located in California, and upon information and belief, the conduct that gave rise to Plaintiff's claims emanated from California.

## VIOLATIONS ALLEGED

## COUNT I
### VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT
(CAL. CIV. CODE § 1798.80, *et seq.*)
**(On Behalf of the National Class or, Alternatively, the California Class)**

43. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

44. Sony Pictures is a "business" as that term is defined in Cal. Civ. Code § 1798.80(a).

45. Plaintiff and the Class members are "individual[s]" as that term is defined in Cal. Civ. Code § 1798.80(d).

46. Plaintiff and the Class members had "personal information" compromised as a result of the November, 2014 data breach, as that term is used in both Cal. Civ. Code 1798.80(e) and 1798.81.5(d)(1)(C).

47. The data breach of Sony Pictures' corporate network in November, 2014, constitutes a "breach of the security system" pursuant to Cal. Civ. Code § 1798.82(g).

48. Sony Pictures' policies and procedures regarding data protection and retention violated Cal. Civ. Code § 1798.81.5, as Sony Pictures' measures were unreasonable and wholly failed to prevent access to, and disclosure of, its current and former employees' personal information.

49. Sony Pictures' also violated Cal. Civ. Code § 1798.82 by failing to notify Plaintiff and the Class members that there personal, confidential, and highly sensitive information had been compromised and/or stolen by hackers.

50. As a result of Sony Pictures' conduct as described herein, Plaintiff and the Class members have been injured.

51. Plaintiff seeks monetary damages, including damages related to the acquisition of identity theft and credit monitoring services, injunctive and declaratory relief pursuant to Cal. Civ. Code § 1798.84(e), and attorneys' fees and costs.

## COUNT II
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
**(On Behalf of the National Class or, Alternatively, the California Class)**

52. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

53. California Business & Professions Code § 17200, *et seq.* prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

54. Sony Pictures' conduct constitutes unlawful and unfair practices because it constitutes violations of Cal. Civ. Code § 1798.80, *et seq.*, the Confidentiality of Medical Information Act, the Health Insurance Portability and

Accountability Act of 1996, as well as actionable negligence.

55. Sony Pictures conduct was unlawful as it failed to design, implement, and maintain reasonable security measures in protecting the personal, confidential, and highly sensitive data of its current and former employees, including medical information protected by the CMIA and HIPAA, as well as by failing to timely notify Plaintiff and the Class about the data breach.

56. Plaintiff and the Class members have suffered injuries as a direct and proximate result of Sony Pictures' acts as alleged herein.  Plaintiff and the Class have suffered damages through the purchase of credit and identity theft monitoring service, as well as through the cancelling of credit cards and bank accounts, and the fees associated therewith, as well as the time invested by Plaintiff and the Class in protecting themselves from identity theft and other fraud as a result of Sony Pictures' breaches, in addition to the risk for future identity theft and fraudulent activity.

57. Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

## COUNT III
### VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT (CAL. CIV. CODE § 56, *et seq.*)
**(On Behalf of the National Class)**

58. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

59. CAL. CIV. CODE § 56, *et seq.*, requires employers that receive medical information from employees or patients to design, implement, and maintain procedures to ensure the confidentiality and protection from unauthorized use and disclosure of such information.  CAL. CIV. CODE § 56 also prohibits employers from the disclosure of medical information without first obtaining written authorization.

60. Sony Pictures was in the possession of, and retained, medical records belonging to, and regarding, its current and former employees.

61. CAL. CIV. CODE § 56, *et seq.*, imposed a legal duty on Sony Pictures to protect the confidential and highly sensitive medical information of Plaintiff and the Class.

62. Sony Pictures' failed to develop, implement, and matain data security and retention policies that would have prevented the access to Plaintiff and the Class' medical information without prior written authorization. As such, Sony Pictures' violated the legal duty imposed on it by CAL. CIV. CODE § 56, *et seq.*

63. CAL. CIV. CODE § 56.36 entitles Plaintiff and the Class who had medical information compromised during the data breach to $1,000 per class member as well as actual damages.

### COUNT IV
### NEGLIGENCE
**(On Behalf of the National Class or, Alternatively, the California Class)**

64. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

65. Sony Pictures owed Plaintff and the Class a duty to exercise reasonable care in the retention and protection of Plaintiff's and the Class' personal, confidential, and highly sensitive information. This duty included the development, implementation, and maintenance of policies and procedures that would protect Plaintiff's and the Class' personal, confidential, and highly sensitive information from access by unauthorized third parties and persons. Sony Pictures was also aware of its inadequate data protection and retention policies because it was subject to a data breach that revealed personal and confidential information just three years prior.

66. Sony Pictures also owed Plaintiff and the Class a duty to notify them, within a reasonable time, of the data breach that occurred in November, 2014, and

provide a comprehensive list that detailed, *inter alia*, what information was compromised in the attack. This failure has prevented members of the Class to take the necessary measures to avoid further damages from the data breach, including, *inter alia*, credit and identity theft monitoring services for persons whose information was disclosed.

67. Sony Pictures knew, or should have known, of the level of data security required to protect the information it was collecting and retaining from its current and former employees.

68. Sony Pictures' failure to develop, implement, and maintain adequate data collection, retention, and protection policies created a risk of harm to Plaintiff and the Class that was foreseeable. Sony Pictures knew, or should have known, that its data collection, retention, and protection policies were unreasonable and did not reflect industry standards, in part because Sony Pictures suffered a data breach just three years prior to the November, 2014 data breach.

69. Sony Pictures breached its duties owned to Plaintiff and the Class. As a direct and proximate result of Sony Pictures' breach, Plaintiff and the Class' personal, confidential, and highly sensitive information was breached from Sony Pictures' corporate network and dissessminated without their knowledge or consent. This has caused Plaintiff and the Class damages through the purchase of credit and identity theft monitoring service, as well as through the cancelling of credit cards and bank accounts, and the fees associated therewith, as well as the time invested by Plaintiff and the Class in protecting themselves from identity theft and other fraud as a result of Sony Pictures' breaches, in addition to the risk for future identity theft and fraudulent activity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.  Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.  Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.  Award pre-judgment and post-judgment interest on such monetary relief;

E.  Grant appropriate injunctive and/or declaratory relief;

F.  Award reasonable attorneys' fees and costs; and

G.  Grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: December 19, 2014                Respectfully submitted,


By: _____

John H. Gomez, Esq.
John P. Fiske, Esq.
**GOMEZ TRIAL ATTORNEYS**
655 West Broadway Suite 1700
San Diego, CA 92101
Telephone: (619) 237-3490
Fax: (619) 237-3496

Joseph G. Sauder (To Apply *Pro Hac Vice*)
Matthew D. Schelkopf (To Apply *Pro Hac Vice*)
Benjamin F. Johns (To Apply *Pro Hac Vice*)
Joseph B. Kenney (To Apply *Pro Hac Vice*)
CHIMICLES & TIKELLIS LLP

One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
jgs@chimicles.com
mds@chimicles.com
bfj@chimicles.com
jbk@chimicles.com

Richard A. Maniskas, Esquire (To Apply *Pro Hac Vice*)
RYAN & MANISKAS, LLP
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel: 484-588-5516
Fax: 484-450-2582
rmaniskas@rmclasslaw.com